# Acrey v. Commonwealth.

May 2, 1950.

R. C. Tartar, Judge.

Lawrence S. Hail for appellant.

A. E. Funk, Attorney General, Zeb A. Stewart, Assistant Attorney General, and Russell Jones, Commonwealth's Attorney, for appellee.

JUDGE HELM—Reversing.

Appellant, John Acrey, and Willie Crabtree, Lester Gregory, Ray Burgess, and Maurice Fairchild were jointly indicted, charged with the murder of Woodrow Cooper. Separate trials were had. Appellant was found guilty of manslaughter and his punishment fixed at 17 years in prison. He appeals, assigning as errors: (1) The court erred in overruling appellant's demurrer to the indictment; (2) the court erred in admitting incompetent evidence which was prejudicial to the appellant; (3) the court erred in overruling appellant's motion for a directed verdict, and the verdict of the jury is against both the law and the evidence, and (4) the court's instructions were erroneous, and the court failed to instruct the jury on the whole law of the case.

On July 23, 1949, appellant, John Acrey, and Willie Crabtree, Maurice Fairchild, Lester Gregory and Woodrow Cooper were together from early morning until about midnight. They lived at Monticello, in Wayne County. They had been driving about the country in a Buick automobile belonging to Willie Crabtree. John Acrey did the driving. They returned to Monticello late in the day when they were joined by Ray Burgess. All had been drinking beer and whisky; during the day they had had a half case of beer, a pint of whisky, and a half-gallon of moonshine. They had driven to Whitley City, to the Tennessee line, toward Mill Springs, and to Somerset, where a carnival was in progress. They returned to Monticello about 8:30 p. m. They went back to Somerset, went to the carnival, but found that it was closed. Shortly before midnight they started on the return trip to Monticello, traveling on Highway 27 between Somerset and Burnside.

Cecil Gholson was hitch-hiking south on Highway 27. He saw a car stop at John Simpson's driveway, just south of the Greyhound Inn and north of the Parker's Mill Road. He heard loud talking and cursing in the car. The automobile, when a car behind it blew, came south on the highway and stopped about opposite to where he was sitting on the side of the road. It was a two-seated Buick. Gholson had been drinking. After the car stopped he noticed that the door opened and "a guy fell out on the road" toward the center of the road. The Buick did not stop there but a few minutes. It

went south on the highway, going fast. He saw a jeep go by but doesn't remember as to other cars.

Bill Guffey, Jr., 19, a teacher, had visited at Somerset and was returning to Monticello in a jeep about midnight. A short distance south of the Greyhound Inn he saw a car parked on the right side of the road, headed toward Monticello. It was a large, dark, two-seated car; two wheels were on the highway and two wheels were off the pavement. A body was lying on the highway on the driver's side of the car, parallel with the car. The body was on its face. He didn't see anyone around the car. He did not notice any signs of life. He first saw the parked automobile when he came over a rise in the road. He drove down the road, turned around, came back and reported to the police. When he went back to the scene, the parked car wasn't there. The body was some 45 or 50 feet further south on the road. When he first saw the body on the road the clothing didn't appear to be torn and the body didn't appear to be mangled.

Harold Muse, a taxi driver, drove south on Highway 27 about 12:30 a. m. He saw a car parked south of the Greyhound Inn; he slowed down when he saw the car and the men. He saw three or four men standing outside of the car, and saw the head of one man in the car, and a man lying in the road. When he slowed down to go around the body, two of the men got hold of the shoulders and arms of the body lying on the road and pulled it back toward the parked automobile so that he could pass. The man down on the road was slumped, his head was hanging down, one cheek was torn and hanging down, the face was bloody. One of his legs moved. The men standing about the car were next to the car on the driver's side. As he passed on he saw Cecil Gholson about 200 yards down the road.

Joe Newell, of the State Police, was called to the scene the morning of July 24, about 12:30 a. m. He found Cooper on the right side of the highway, his body at an angle of about 45 degrees, with his feet almost on the center line of the road. He saw large patches of blood. Ralph Eller, the coroner, was called to the scene around one o'clock. He found the body of a man who was dead but still warm. The body was torn "all to pieces," the head was crushed, he was crushed through

the body, part of his backbone was lying on the highway, and his clothing was "torn all to pieces." He found three pools of blood on the west side of the highway; one at the body, one about 10 or 12 feet north of it, and the third 35 or 40 feet further north. The Parker's Mill Road is a little south of where he found the body. The body was identified as that of Woodrow Cooper.

Henry Hail, a surveyor, went to what appears to be the scene of the accident on Highway 27 below the Greyhound Inn the morning after the death of Woodrow Cooper. He made pictures of the highway there, and shortly before the trial prepared a plat of Highway 27 at this point. The pavement of the road there is 18 feet wide, the shoulders 4 or 5 feet wide. The road is straight and is down grade to the scene of the accident, going south for 75 or 100 yards.

Frank E. Beaty, Boyd McFall, Jr., and Roy Cooper testified as to statements of appellant. McFall testified as to hairs removed from underneath the car on July 24, and about delivering them in an envelope to the Commonwealth Attorney's office. Montie Elam clipped hair from Cooper's head after his death. Jake Keeton delivered this in an envelope to the Commonwealth Attorney's office. Mildred Cooper, secretary to the Commonwealth Attorney, mailed the hair to the Federal Bureau of Investigation at Washington. Edwin R. Donaldson, of the Federal Bureau of Investigation, testified as to his qualifications, and that he examined the hair beneath a comparison microscope; that the hair was human, and that the known hairs of decedent "were similar in all examinable characteristics to the other hair submitted," but that such an examination is not conclusive.

Summarizing the testimony for appellant: John Acrey, 24 years of age, has lived at Monticello all his life; had known Woodrow Cooper all his life, was with him July 23, 1949, from about 8:30 or 9 a. m. until around 11:30 or 11:45 p. m. They left the carnival at Somerset and started toward Monticello on Highway 27. They stopped near the Greyhound Inn. He stopped because Woodrow "was raising hell in the back seat, wanted me to stop." He wanted to urinate, threatened to "and I stopped pretty quick." Woodrow "had been drinking all day." Appellant had drunk two beers and two or three drinks of whisky during the day. He was

not drinking much "on account of driving the automobile." When he stopped suddenly, Cooper bumped his head against the front seat. He was preparing to urinate in the car. Cooper said, "I am going to whip your G—— d—— a——." As he "opened the door" on the right side of the car "and went around the car, I opened the door" on the driver's side "and met him and he grabbed my arm." Appellant "met him by the back left fender on the left side." Cooper "swung loose" and hit appellant on the left side of his nose. Appellant says "he swung at me again and fell right by the side of the car and got up and Burgess and Gregory got him and tried to get him to get in the car and he told me to get in first and I got in. * * * I got in and set down" under the steering wheel, and "Cooper opened the door and grabbed me around the neck some how or other and I hit him and pushed him out of the car." Cooper was larger than appellant, would weigh 185 or 190 pounds. He was on the pavement when appellant shoved him back. Appellant says, "I got out of the car and pushed him to the back of the car and he fell to the road and I jumped in the car and went on." As he drove off Cooper was lying on the road to the back of the car "two or three feet from the white line." Acrey says he drove off "because I didn't want to have no trouble with him." At the time he left Cooper there on the highway "he was alive." He had never had any trouble with Cooper before. He did not kill him or help kill him.

Henry A. Campbell, school teacher and basketball coach, was driving south on Highway 27 between 12 and one o'clock. About three-quarters of a mile south of the Greyhound Inn "there is sort of a rise there and a long down grade." He was traveling 35 or 40 miles an hour. He was meeting another car; suddenly he saw something some 25 or 30 feet ahead on the road; he put on his brakes and attempted to miss it, to put the center of his car over it; the left side of his car hit something; he drove down the road about 150 feet, turned around, came back and saw the object was a human being. He then went to the Greyhound Inn and had one of the girls call the police.

Willie Crabtree. the owner of the car, told about driving around and getting the whisky and beer. He stated that he did not remember about the last trip to the carnival, and did not know what happened when

Woodrow Cooper was killed; that he was lying in the front seat of his car when he came to himself about 7 or 8 o'clock Sunday morning.

Ray Burgess says that Woodrow, who was riding in the back seat, kept telling John Acrey, the driver, to stop; that Acrey told him to "wait until I find a place to pull off the road." Acrey stopped; Cooper and Acrey both got out of the car; Acrey struck him and then asked him if he had had enough, and Woodrow said "Yes." Burgess suggested that they get in the car; Woodrow asked Acrey to get in first; Acrey got under the steering wheel; Woodrow jerked loose from Burgess and Gregory, opened the door and jumped on Acrey; Acrey got out, shoved Woodrow back, knocked him down on the highway, and then jumped in the car and drove off and left him. Burgess says that Woodrow, when he last saw him, was on his hands and knees going toward the shoulder of the road.

The indictment charges that the named defendants did "* * * in some way and manner and by some means, instruments, and weapons to the Grand Jurors unknown * * * kill and murder * * * Woodrow Cooper * * *." The trial court properly overruled appellant's demurrer to this indictment. See, Newsome v. Commonwealth, 236 Ky. 344, 33 S. W. 2d 36; Warren on Homicide, Permanent Edition, Vol. 2, section 175, page 55; 40 C. J. S., Homicide, sec. 150, page 1045; 27 Am. Jur., Indictments and Information, section 66.

Traveling south on Highway 27 at this point one goes over a rise and then down a slope. Woodrow Cooper had been drinking all day. Appellant knocked him down and left him in that condition at the bottom of the slope on a road—a through highway—traveled by many automobiles, trucks and busses. Some of those passing by saw Cooper's body in an apparently helpless condition near the parked car before it drove away, and after it drove away. The testimony was, we believe, sufficient to take the case to the jury.

Objection is made to the evidence of Edwin R. Donaldson on the ground that the integrity of the hairs examined by him was not established. From an examination of the testimony we believe that the integrity was sufficiently established, and that the testimony of Donaldson was properly admitted.

738

Objection is made to the introduction of the photographs and maps of Henry Hail. Hail testified that he made pictures of blood spots on the west side of Highway 27, south of the Greyhound Inn and between the Parker's Mill Road and John Simpson's driveway about noon the day after Cooper was killed; that these pictures fairly and accurately represent the situation there; that he later made a plat of Highway 27 as it runs there; that this plat is a correct and accurate representation of Highway 27 in the vicinity of the blood marks. The distance between the spots of blood, as testified to by him, are about the same as those given by other witnesses. An examination of the testimony does not reveal that the pictures were taken and the map made of the place where Woodrow Cooper met his death. This fact should have been established before the pictures and maps were permitted to be introduced.

Instructions Nos. 1, 2 and 3, as given by the trial court, although not artfully drawn appear to be substantially correct. Instruction No. 4, the self-defense instruction, should not be limited to "Instruction No. 1" but a general self-defense instruction should have been given. Under the facts of this case an instruction on involuntary manslaughter also should have been given. Because of these errors the judgment must be reversed.

The judgment is reversed for proceedings not inconsistent with this opinion.